**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**JOSEPH SIANO,**   CASE NO.:

   *Plaintiff,*

**v.**

**EXPERIAN INFORMATION SOLUTIONS,**
**INC. and EQUIFAX INFORMATION**
**SERVICES, LLC,**

   *Defendants,*
_____/

# PLAINTIFF'S COMPLAINT
## JURY DEMAND

1. Plaintiff, JOSEPH SIANO (hereinafter "Plaintiff" or "Mr. Siano") brings this action against Defendants EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") and EQUIFAX INFORMATION SERVICES, LLC ("Equifax") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA").

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3. Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Broward County, Florida.

## PARTIES

4. Plaintiff Joseph Siano is a natural person who, at all times relevant to this action is and was a resident of Broward County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

5. Defendant, Experian is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

6. Defendant, Equifax is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

## STATUTORY FRAMEWORK
### THE FCRA

7. The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.*, was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

8. Congress found that "[i]nnacurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." *See* 15 U.S.C. §1681(a)(1).

9. "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to

secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

10. A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. *See* 15 U.S.C. §1681s-2.

11. "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) to conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. *See Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016).

12. Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *See* 15 U.S.C. § 1681(a)(3),(4).

13. The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. 15 U.S.C. § 1681e(b). If a consumer disputes information contained in their credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." *See* 15 U.S.C.S. § 1681i(a)(1)(A).

14. In performing the reinvestigation, the FCRA requires a credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." *See* 15 U.S.C.S. § 1681i(a)(4).

15. If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall…(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." *See* 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

16. The FCRA provides a private right of action against any person that violates the provisions of the FCRA. *See* 15 U.S.C. §§ 1681o, 1691n.

17. If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. *See* 15 U.S.C. § 1681n(a).

18. Under the FCRA, the term "consumer report" generally refers to any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:

   a. credit or insurance to be used primarily for personal, family, or household purposes;

   b. employment purposes; or

   c. any other purpose authorized under section 1681b of this title.

*See* 15 U.S.C. § 1681a(d)(1).

19. The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

*The Consumer Information Indicator*

20. The Consumer Information Indicator ("CII") is a single-character code which indicates an account's status in relation to a consumer's bankruptcy.

21. Furnishers and CRAs are required to update the CII code when a bankruptcy is filed, and again when the bankruptcy is discharged, dismissed, or withdrawn.

22. The reporting of a proper CII code for a consumer's account ensures that the tradeline for that account accurately discloses that account's relationship to the bankruptcy case and can suppress other statements about the account (i.e., "in collections", "charged off") which are inconsistent with its status with respect to the bankruptcy.

23. While furnishers sometimes report derogatory information about an account during and after a bankruptcy, the reporting of an accurate CII code ensures that if such derogatory information is reported, it is either withheld from viewers of the report, or placed in its proper context relative to the consumer's bankruptcy.

24. This is especially important, as not all accounts are included in and/or dischargeable by consumer bankruptcy.

25. The failure to report an accurate CII code for an account which was discharged in bankruptcy, or is included in an active bankruptcy, can lead to a consumer's report containing derogatory information which would otherwise not be visible to viewers of the report, and render other portions of the report misleading, since a viewer would not be aware that the account is included in bankruptcy.

5

26. These false impressions become even greater in the light of the universally adopted Metro 2 standards, which require that an account within, or discharged by, a consumer bankruptcy be identified as such.

27. Since the industry standard requires disclosure of a pending bankruptcy, the absence of such a disclosure inherently misleads a viewer into believing that the account is not included in bankruptcy.

28. Relatedly, where an account which *is not* discharged or dischargeable in bankruptcy is reported with an incorrect CII indicator, the consumer's report can falsely indicate that the account is subject to bankruptcy or discharge and suppress the consumer's positive history of making payments toward the account.

## FACTUAL ALLEGATIONS

29. On March 2, 2022, Plaintiff filed a Chapter 13 Bankruptcy voluntary petition in the United States District Court for the Southern District of Florida, Case No. 22-11727-PDR (hereinafter "Bankruptcy").

30. Plaintiff's Bankruptcy was discharged on December 1, 2022.

31. Defendants Experian and Equifax have been reporting inaccurate information related to Plaintiff's auto loan account with World Omni Financial Corp. d/b/a Southeast Toyota Finance ("SETF") and TD Bank USA/Target Credit ("Target") after Plaintiff's Bankruptcy.

*SEFT Account*

32. Plaintiff reaffirmed the SEFT account in his Bankruptcy and continues to make on-time monthly payments on the account.

33. However, shortly after Plaintiff's Bankruptcy was filed, Defendant Experian began erroneously reporting that the SEFT account was included in Plaintiff's Bankruptcy and failed to report Plaintiff's on-time monthly payment history since February 2022.

6

34. On or about July 26, 2023, Plaintiff mailed a letter to Experian informing Experian that the SEFT account was not included in bankruptcy and that he has never made a late payment on the account. With his dispute letter, Plaintiff included the Chapter 13 Plan showing that Plaintiff elected to make payments on the SETF account.

35. Defendant Experian failed to correct the inaccurate information and continued to report the account as included in Plaintiff's Bankruptcy and failed to report Plaintiff's on-time payment history since February 2022.

36. On or about September 8, 2023, Plaintiff contacted Experian by telephone and disputed the inaccurate information associated with the SEFT account.

37. Once again, Defendant Experian failed to correct the inaccurate information and continued to report the account as included in Plaintiff's Bankruptcy and failed to report Plaintiff's on-time payment history since February 2022.

38. Notwithstanding the above, Defendant Equifax also reported inaccurate information related to the SEFT account.

39. In or around July or August 2023, Defendant Equifax began reporting the SEFT account as closed with a $0 balance and failed to report Plaintiff's on-time payment history after June 2023.

40. On or about September 8, 2023, Plaintiff contacted Equifax by telephone and disputed the inaccurate information associated with the SEFT account.

41. Defendant Equifax failed to correct the inaccurate information and continued to report the account as closed and failed to report Plaintiff's on-time payment history since June 2023.

*Target Account*

42.     Plaintiff included the Target account in his Bankruptcy.

43.     Defendant Equifax has been reporting inaccurate information related to the Target account, including failing to report that the account was included in bankruptcy instead Equifax listed the account status as "unavailable."

44.     On or about July 26, 2023, Plaintiff mailed a letter to Equifax disputing the "unavailable" status associated with the Target account and informing Equifax that the Target account was included in his Bankruptcy.

45.     On or about August 9, 2023, Equifax sent Plaintiff investigation results indicating that it had updated the account status to show that the account was included in bankruptcy.

46.     However, Equifax continued to report the Target account status as "unavailable" instead of indicating that the account was included in Plaintiff's bankruptcy.

47.     On or about September 8, 2023, Plaintiff contacted Equifax by telephone and disputed the inaccurate status associated with the Target account.

48.     Defendant Equifax failed to correct the inaccurate information and continued to report the Target account status as "unavailable."

49.     Notwithstanding the above, Equifax failed to indicate that Plaintiff was disputing the Target account on his credit reports.

50.     Furthermore, Plaintiff received correspondence from Target that Target was reporting the account accurately to the credit reporting agencies including reporting that the account was included in Plaintiff's Bankruptcy.

51. Defendants' derogatory and inaccurate reporting of the SEFT auto loan account and Target account (Equifax only) on Plaintiff's credit reports negatively reflects upon Plaintiff's financial obligations, credit score and credit worthiness to existing and potential creditors.

52. Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. *See Pedro v. Equifax, Inc.*, 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); *See Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate"); *See Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); *See Binns v. Ocwen Loan Servicing, LLC*, No. 14- 01764, 2015 U.S. Dist. LEXIS 132743, 2015 WL 5785693, at *9 (S.D. Ind. Sept. 30, 2015) ("injuries to plaintiffs' credit scores and reputations were considered intangible harms"); *See Rothman v. U.S. Bank Nat'l Ass'n*, No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); *See Green v. RentGrow, Inc.*, No. 2:16cv421, 2016 U.S. Dist. LEXIS 166229 ("A decrease in credit score may still establish an injury in fact sufficient to confer standing"); *See Adams v. Fifth Third Bank*, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and, *See Coulbertson v. Experian Info. Sols., Inc.*, No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484

(N.D. Cal. Mar. 24, 2017) ("At a minimum, Coulbertson has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

### COUNT I – VIOLATIONS OF 15 U.S.C. §1681i
### AGAINST EXPERIAN

53. Plaintiff incorporates by reference paragraphs 1-3, 5, 7-37 and 51-52 as if fully stated herein.

54. At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

55. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

56. During the relevant time frame, Experian received Plaintiff's disputes regarding the accuracy or completeness of the SEFT accounts appearing on Plaintiff's credit report.

57. Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

58. Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

59. In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

60. As a result of Experian's violations of the FCRA, Plaintiff has suffered damages including but not limited to, damages for mental and emotional distress associated with the SEFT accounts remaining on his credit report(s) following his dispute, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of: actual damages in an amount to be determined by the jury; punitive damages in an amount to be determined by the jury; statutory damages as determined by the Court; attorneys' fees, litigation expenses and costs; interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances

### COUNT II – VIOLATIONS OF 15 U.S.C. §1681e(b)
### AGAINST EXPERIAN

61. Plaintiff incorporates by reference paragraphs 1-3, 5, 7-37 and 51-52 as if fully stated herein.

62. At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

63. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

64. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

65. Any users of credit reports that viewed the SEFT account saw the inaccurate and derogatory information associated with the account.

66. Despite Plaintiff's disputes, Experian continued reporting the SEFT accounts inaccurately.

67. Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages pursuant to 15 U.S.C. §1681n.

68. In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

11

69. As a result of Experian's failures to comply with the FCRA, Plaintiff has suffered damages including but not limited to, damages for mental and emotional distress associated with the SEFT account remaining on his credit report(s) following his dispute, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of: actual damages in an amount to be determined by the jury; punitive damages in an amount to be determined by the jury; statutory damages as determined by the Court; attorneys' fees, litigation expenses and costs; interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT III – VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EQUIFAX

70. Plaintiff incorporates by reference paragraphs 1-3, 6, 7-32 and 38-52 as if fully stated herein.

71. At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

72. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

73. During the relevant time frame, Equifax received Plaintiff's disputes regarding the accuracy of the Target and SEFT accounts on Plaintiff's credit reports.

74. Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

75. Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

76. In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

77. As a result of Equifax's violations of the FCRA, Plaintiff has suffered damages including but not limited to, damages for mental and emotional distress associated with the Target, and SEFT accounts remaining on his credit report(s) following his disputes, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of: actual damages in an amount to be determined by the jury; punitive damages in an amount to be determined by the jury; statutory damages as determined by the Court; attorneys' fees, litigation expenses and costs; interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances

### COUNT IV– VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST EQUIFAX

78. Plaintiff incorporates by reference paragraphs 1-3, 6, 7-32 and 38-52 as if fully stated herein.

79. At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

80. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

81. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

82. Any users of credit reports that viewed the Target and SEFT accounts saw the inaccurate and derogatory information associated with the account.

83. Despite Plaintiff's disputes, Equifax continued reporting the Target and SEFT accounts inaccurately.

84. Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages pursuant to 15 U.S.C. §1681n.

85. In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

86. As a result of Equifax's failures to comply with the FCRA, Plaintiff has suffered damages including but not limited to, damages for mental and emotional distress associated with the Target and SEFT accounts remaining on his credit report(s) following his disputes, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of: actual damages in an amount to be determined by the jury; punitive damages in an amount to be determined by the jury; statutory damages as determined by the Court; attorneys' fees, litigation expenses and costs; interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances.

## JURY DEMAND

87. Plaintiff demands a trial by jury on all issues so triable.

Dated: June 28, 2024	*Respectfully submitted*,

**SHARMIN & SHARMIN, P.A.**

*/s/ Eiman Sharmin*
Eiman Sharmin, Esq.
eiman@sharminlaw.com
FBN: 716391
830 North Federal Highway
Lake Worth, FL 33460
Main: 561-655-3925
Fax: (844) 921-1022

*Attorneys for Plaintiff*